Joel MARCUS and David Morando, on their own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

STATE OF KANSAS, DEPARTMENT OF REVENUE, Defendant.

Civil Action No. 96–4140–DES.

United States District Court, D. Kansas.

Sept. 30, 1997.

J. Davis Connor, Stephen R. Senn, Peterson & Myers, P.A., Lakeland, FL, Robert Joseph Antonello, Antonello & Fegers, P.A., Winter Haven, FL, John J. Miller, Law Offices of John J. Miller, P.A., Overland Park, KS, for Joel Marcus and David V. Morando.

Frank S. Reeb, Kansas Dept. of Revenue Bureau of Legal Services, Topeka, KS, Joseph Brian Cox, Kansas Dept. of Revenue, Topeka, KS, for Department of Revenue, State of Kansas.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on defendant's Motion to Dismiss and Request for Oral Arguments (Doc. 19). Defendants request for oral argument is denied. After reviewing the briefs of the parties, the court finds that oral argument would not materially assist it in deciding the pending motion. For the reasons discussed below, defendant's Motion to Dismiss is granted.

## I. BACKGROUND

Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, requires public entities to provide physical access to programs and services and to ensure that such programs and services are readily accessible to and usable by disabled individuals. 42 U.S.C. §§ 12131(1), 12132, 12181, and 12182. Where parking is provided for a public building, the ADA requires that a certain number of restricted parking spaces be provided for the disabled, and located on the shortest accessible route of travel from adjacent parking to an accessible entrance. *See* ADA Accessibility Guidelines for Buildings and Facilities, Appendix A to 28 C.F.R. ch. I pt. 36, § 4.6.2; *Kornblau v. Dade County,* 86 F.3d 193, 194 (11th Cir.1996). In order to park a vehicle in a reserved parking space, Kansas law requires display of an exemption parking permit—a placard on which the international symbol of access to the physically disabled is printed. Kan. Stat. Ann. §§ 8–1,125 and 8–1,126. Use of a reserved parking space without display of a disabled parking placard is punishable by fine. Kan. Stat. Ann. § 8–1,129.

Defendant, State of Kansas, Department of Revenue ("DOR"), is the principal administrative unit responsible for the administration of Kan. Stat. Ann. § 8–1,125. Pursuant to Kan. Stat. Ann. § 8–145d, DOR issues exemption parking permits to those applicants meeting the definition of "person with a disability" under of Kan. Stat. Ann. § 8–1,124. To obtain a disabled parking placard and individual identification card, a disabled person must pay $5.25 to the county treasurer of the county in which the applicant resides or has an office or principal place of business. *See* Kan. Stat. Ann. § 8–145d and Kan. Admin. Regs. 92–51–40. The statutes also require that the placard be renewed every three years at a cost of $5.25 for the renewal placard. *See* Kan. Stat. Ann. § 8–1,125(c).

Plaintiffs, both of whom are disabled within the meaning of Kan. Stat. Ann. § 8–1,124, seek to represent a class of disabled people qualified under Kan. Stat. Ann. § 8–1,124 to acquire disability placards and identification cards, and who have paid or will be required to pay the $5.25 charge. Plaintiffs allege in their complaint that the charges assessed by defendant for the placards and identification cards constitute a violation of the ADA. Specifically, plaintiffs claim that the charges exacted by defendant violate 28 C.F.R. § 35.130(f), which prohibits public entities from charging the disabled for measures taken to provide the nondiscriminatory treatment required by the ADA. Plaintiffs seek declaratory and injunctive relief as well as a refund of sums already paid.

Defendant has filed a motion, pursuant to Fed.R.Civ.P. 12(b)(1), to dismiss the complaint on the grounds that the Tax Injunction Act, 28 U.S.C. § 1341, prohibits federal jurisdiction. The Tax Injunction Act provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Defendant contends that provision of the relief requested by plaintiffs would constitute enjoining, suspending, or restraining the collection of a Kansas state tax, and that the Kansas state courts are fully capable of providing plaintiffs with a "a plain, speedy and efficient remedy" for their ADA claim.

## II. DISCUSSION

■■■ Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction typically take two forms. *Holt v. U.S.,* 46 F.3d 1000, 1002 (10th Cir.1995). A facial challenge is an attack on jurisdiction which questions the sufficiency of the complaint. *Id.* (Citing *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990)). "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Id.* A factual challenge to subject matter jurisdiction challenge the facts upon which subject matter jurisdiction depends. *Id.* In reviewing a factual attack on subject matter jurisdiction, a district court must go beyond the allegations and evaluate the evidence presented by the parties. *Id.* "A court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question

is intertwined with the merits of the case." *Id.* (citing *Wheeler v. Hurdman,* 825 F.2d 257, 259 n. 5 (10th Cir.1987)). "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Id.*

In the present case, defendant's Rule 12(b)(1) motion requires the court to determine whether, pursuant to the Tax Injunction Act, the charge at issue is a "tax" and whether the remedy under state law is "plain, speedy and efficient." Accordingly, defendant's Fed.R.Civ.P. 12(b)(1) motion raises a factual challenge to the existence of subject matter jurisdiction. However, since the jurisdiction argument is unrelated to the merits of the underlying ADA claim, the court is not required to convert defendant's motion into a Fed.R.Civ.P. 12(b)(6) motion or a Fed.R.Civ.P. 56 summary judgment motion and the court will decide the issue of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) motion to dismiss standards.

Federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so. *Castaneda v. INS,* 23 F.3d 1576, 1580 (10th Cir.1994). "A court lacking jurisdiction must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Scheideman v. Shawnee County Bd. of County Comm'rs,* 895 F.Supp. 279, 280 (D.Kan.1995) (citing *Basso v. Utah Power and Light Co.,* 495 F.2d 906, 909 (10th Cir.1974)); Fed.R.Civ.P. 12(h)(3). The party seeking to invoke a federal court's jurisdiction sustains the burden of establishing that such jurisdiction is proper. *Id.* When federal jurisdiction is challenged, the plaintiff bears the burden of showing why the case should not be dismissed. *Jensen v. Johnson County Youth Baseball,* 838 F.Supp. 1437, 1439–40 (D.Kan. 1993).

Turning now to the merits of defendant's argument, some discussion of the Tax Injunction Act may be availing. The Tax Injunction Act was founded on principals of federalism and comity, principals which have traditionally made federal courts reluctant to interfere with state tax administration. *Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm.,* 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995). The Supreme Court articulated the rationale for this hands-off approach in *Dows v. City of Chicago,* 11 Wall. 108, 110, 20 L.Ed. 65 (1871):

> "It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible."

*Nat'l Private Truck Council,* 515 U.S. at 586, 115 S.Ct. at 2354 (quoting *Dows,* 11 Wall. at 110, 20 L.Ed. 65). *See Wright v. McClain,* 835 F.2d 143, 144 (6th Cir.1987) ("The Tax Injunction Act is an expression of congressional purpose to promote comity and to afford states the broadest independence, consistent with the federal constitution, in the administration of their affairs, particularly revenue raising."). The Tax Injunction Act prohibits federal courts from intruding in state tax administration by providing that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." *Id.;* 28 U.S.C. § 1341. The Supreme Court held, in *California v. Grace Brethren Church,* 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982), that the Tax Injunction Act applies to actions seeking declaratory relief.

■ To avoid application of the Tax Injunction Act, plaintiffs contend the assessments in question are fees rather than taxes under Kansas law. This is a question of federal law. *Wright,* 835 F.2d at 144. *See Robinson Protective Alarm Co. v. Philadelphia,* 581 F.2d 371, 374–76 (3rd Cir.1978) ("[T]he meaning of the term 'tax under state law' in 28 U.S.C. § 1341 should be determined as a matter of federal law by reference to congressional policies underlying the Tax Injunction Act, rather than by adoption of state tax labels developed in entirely different legal contexts."). The issue here, then, is whether the assessment in question is a tax within the meaning of the Tax Injunction Act.

■ The Tax Injunction Act only precludes federal review of state laws intended as revenue raising measures for benefit of the general public. *Lussier v. State of Florida, Dept. of Highway Safety and Motor Vehicles,* 972 F.Supp. 1412, 1418–19 (M.D.Fla. 1997) (citing *Miami Herald,* 734 F.2d at 670; *Bidart Bros. v. The California Apple Comm'n.,* 73 F.3d 925, 928–29 (9th Cir.1996); *San Juan Cellular Tel. Co. v. Public Serv. Comm'n. of Puerto Rico,* 967 F.2d 683, 685 (1st Cir.1992)). It does not prevent federal review of regulatory fees. *Id.* Regulatory fees, as opposed to revenue raising measures, are typically intended to discourage particular conduct by making such conduct more costly, or to generate income to defray the cost of the regulation. *Id.* (*citing See San Juan Cellular,* 967 F.2d at 685). "In determining whether a financial exaction by the state is a tax or a fee, the label given the assessment is not dispositive; rather, the court must inquire into the purpose of the assessment, i.e. what function the assessment was intended to serve." *Id.*

■ Plaintiffs argue that the charges for disabled parking placards and identification cards "have always been based on the state's actual cost of issuance." Plaintiffs refer the court to Kan. Stat. Ann. § 8–1,125, which provides that "[t]he secretary of revenue may adopt rules and regulations prescribing a fee for placards and individual identification cards issued pursuant to this section, however, such fee shall not exceed the actual cost of issuance thereof." The plain language of the statute, plaintiffs contend, reveals that the charges in issue were never intended to be part of the state's revenue generating measures.

The court disagrees. Although the statute plainly refers to cost, it does so only in the context of providing a limit or cap on the amount of the charge assessed by the secretary of revenue. It does not appear that the statute can be read to imply some intended purpose, whether regulatory or revenue raising, behind its grant of authority to the secretary of revenue. Where the purpose of the assessment is unclear, the ultimate use for the funds raised is highly relevant. *Lussier,* 972 F.Supp. 1412, 1420–22 (citing *Travelers Ins. Co. v. Cuomo,* 14 F.3d 708, 713 (2nd Cir.1993); *San Juan Cellular,* 967 F.2d at 685). In this case, it may be instructive to examine the specific provisions authorizing the assessment.

There are several components to the $5.25 assessment. Of the total, $2.25 is directed, pursuant to Kan. Stat. Ann. § 8–145d, to the county treasurer as a "service fee," and on its face bears no relation to cost. Nor does the service fee in fact appear to be regulatory. Instead, the service fee collected by the various county treasurers is deposited in "the special fund created pursuant to Kan. Stat. Ann. § 8–145, and amendments thereto, and such amounts shall be used by the county treasurer for all purposes for which such fund has been appropriated by law." Kan. Stat. Ann. § 8–145d. Furthermore, the service fee is imposed on all persons applying for vehicle registration or renewal, and not just on those applying for a disabled parking placard. *Id.* Such general application may indicate a revenue raising intent. *See, e.g., Bidart Bros. v. California Apple Comm.,* 73 F.3d 925, 931 (9th Cir.1996) ("[a]n assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed on a narrow class."). The language of the statute, as well as its general application and the ultimate use of the funds collected, convinces the court that at least the service fee portion of the assessment in issue is intended to raise revenue.

The remainder of the total assessment, $2.00 for the parking placard and $1.00 for the identification card, is authorized by K.A.R. 92–51–40 to be collected by the county treasurer along with the $2.25 service fee. Like Kan. Stat. Ann. § 8–145d, Kan. Admin. Regs. 92–51–40 on its face bears no relation to cost. As for the ultimate use of the revenue collected under Kan. Admin. Regs. 92–51–40, at least some portion is directed into the State Highway Fund. *See* Kan. Stat. Ann. § 8–145. The State Highway Fund, in turn, is used for expenditures that ultimately benefit the general public. *See* Kan. Stat. Ann. § 68–416(b)(3). Even if, as plaintiffs contend, the amount of the Kan. Admin. Regs. 92–51–40 funds flowing to the State Highway Fund is "minuscule," the court is

not convinced that it could assert jurisdiction over any regulatory portion without "doing violence to the revenue raising provisions of the measure." *Lussier*, 972 F.Supp. 1412, 1420 (quoting *Miami Herald*, 734 F.2d at 671). Nor does the court believe that it could assert jurisdiction over one component of the total assessment and not the other without disrupting the statutory scheme of administration and enforcement which would interfere with the collection of the tax itself. Such interference by a federal court is the precisely what the Tax Injunction Act was intended to prevent. *Lussier*, 972 F.Supp. 1412, 1420.

The court is not persuaded that the $5.25 assessment is intended for regulatory reasons, plaintiffs' arguments notwithstanding. Accordingly, the court finds that the $5.25 assessment represents a tax within the meaning of the Tax Injunction Act.

"Although the assertion of federal jurisdiction may interfere with state tax assessment and collection, such jurisdiction will nonetheless exist if the state fails to provide a 'plain, speedy and efficient remedies' in its courts." *Lussier*, 972 F.Supp. 1412, 1420–22. Plaintiffs have not alleged the absence of a "plain, speedy and efficient remedy" in the Kansas state courts, so the court concludes that the Tax Injunction Act applies to this case.

**IT IS THEREFORE BY THE COURT ORDERED** that defendant's Motion to Dismiss (Doc. 19) is granted and this case is dismissed, without prejudice, for lack of subject matter jurisdiction.