832 So.2d 141 (2002)
STATE of Florida, Department of Highway Safety, etc., et al., Appellants,
v.
Sergio RENDON, et al., Appellees.
No. 3D02-611.
District Court of Appeal of Florida, Third District.
October 30, 2002.
Reconsideration and Certification Denied December 11, 2002.
*142 Robert A. Butterworth, Attorney General, and Louis F. Hubener and Eric J.
*143 Taylor, Assistant Attorneys General, for appellants.
Karen A. Gievers, Miami; Peterson & Myers and J. Davis Connor, Lake Wales, and Stephen R. Senn, Lakeland; Antonello & Fegers; Michael F. Lanham, Miami, for appellees.
Before JORGENSON, LEVY, and GODERICH, JJ.
JORGENSON, Judge.
In an action challenging the imposition and collection of fees for placards for handicapped parking spaces, the State of Florida, Department of Highway Safety and Motor Vehicles [the agency] appeals from orders granting class certification and granting plaintiff's motion for summary judgment. For the following reasons, we reverse.
Various handicapped drivers sued the agency in a class action for declaratory and injunctive relief and to recover fees paid for parking placards that allow them to park in spaces reserved for the handicapped. The complaint alleged that the imposition of the fee violated Title II of the Americans with Disabilities Act [ADA], specifically 42 U.S.C. § 12132, and 28 C.F.R. § 35.130(f), a Department of Justice regulation implementing Title II. The regulation provides that
A public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.
Until 2002, the State charged a $15.00 fee for the handicapped parking placards. See Fla. Stat. § 320.0848(2)(c) (2001). As of 2002, that fee has been replaced by an administrative processing charge of $1.50. Ch.2002-20, § 121 at p. 577, Laws of Fla.

History of the Litigation
Plaintiffs first filed their actions in federal court; those actions were dismissed on the grounds that the Federal Tax Injunction Act, 28 U.S.C. § 1341, "divests the federal courts of subject matter jurisdiction over claims challenging state taxation procedures where the state courts provide a `plain, speedy and efficient remedy.' " Lussier v. State of Florida, Dep't of Highway Safety & Motor Vehicles, 972 F.Supp. 1412, 1417 (M.D.Fla.1997); see also Rendon v. State of Florida, Dep't of Highway Safety & Motor Vehicles, 930 F.Supp. 601 (S.D.Fla.1996). Both district courts held that Florida's surcharge for handicapped parking placards constituted a tax, and that plaintiffs' remedies were in state court, pursuant to section 320.0848, Florida Statutes. "Insofar as the state court has jurisdiction over ADA cases, 42 U.S.C. § 12202, the Court finds that Plaintiffs may raise all challenges to the surcharge under Fla. Stat. Ann. § 320.0848, including claims that the surcharge violates the ADA, in the state court." Rendon, 930 F.Supp. at 605. Having ruled that they lacked subject matter jurisdiction, the courts did not reach the merits of the actions.
In 1996, plaintiffs filed a class action complaint against the agency in state court, seeking declaratory and injunctive relief and damages consisting of repayment of the allegedly unlawful parking placard tax. The trial court granted class certification; denied defendants' motion to dismiss; denied the agency's motion for summary judgment; and granted the plaintiffs' motion for summary judgment. The trial court ruled, inter alia,
1) that plaintiffs did not have to first exhaust administrative remedies before *144 challenging the tax as a violation of the ADA;
2) that the action was not time-barred by the three-year claim period specified in section 215.26(2), Florida Statutes; and
3) that sovereign immunity had been waived under Title II of the ADA.
The court declared that "Florida's statutory scheme of requiring the payment of a fee for a disabled parking permit under Fla. Stat. § 320.0848 violates Title II of the Americans with Disabilities Act." The court enjoined the State from requiring the payment of any fee for a handicapped parking permit from future permit applicants, and ordered the State to reimburse plaintiffs for parking permit fees collected since January 26, 1992, plus interest.
We reverse, as,
1. Sovereign immunity affords the agency an absolute defense to claims for declaratory relief and money damages; and
2. 28 C.F.R. § 35.130(f) is an invalid exercise of the Department of Justice's rulemaking authority, and the plaintiffs are not entitled to prospective injunctive relief.
The complex issue of a state's sovereign immunity from suit under federal law invokes bedrock concepts of federal constitutional law regarding the sovereign rights of states, and begins with the Eleventh Amendment to the United States Constitution, which provides:
The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
U.S. Const. amend. XI.
The Amendment has been read to establish first "that each State is a sovereign entity in our federal system; and second, that `[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (citations omitted). The Eleventh Amendment therefore imposes limits on congressional power to strip states of immunity in federal court; Congress may do so only if the Act in question is passed pursuant to section five of the Fourteenth Amendment. Id. at 59, 116 S.Ct. 1114; see also Bd. of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).
In Garrett, the Court held that "[s]ection 5 of the Fourteenth Amendment grants Congress the power to enforce the substantive guarantees contained in § 1 [of the Fourteenth Amendment[1]] by enacting `appropriate legislation'." Id. at 365, 121 S.Ct. 955 (citations omitted). However, " § 5 legislation reaching beyond the scope of § 1's actual guarantees must exhibit `congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" Id. The constitutional precepts that limit congressional power to strip states of their sovereign immunity in federal court also limit congressional power to strip states of sovereign immunity in their own state courts. See Alden v. Maine, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). The same Fourteenth Amendment analysis *145 applies; that analysis "does not foreclose a State from asserting immunity to claims arising under federal law merely because that law derives not from the State but from the national power." Id. at 732, 119 S.Ct. 2240.
Applying those precepts to the ADA, the Supreme Court held that Title I of the ADA[2], which imposes affirmative obligations on employers, is not valid enforcement legislation and thus does not abrogate the sovereign immunity of the states. See Garrett, 531 U.S. at 356, 121 S.Ct. 955. In Garrett, the Court held that employees of the State of Alabama could not recover money damages by reason of the State's failure to comply with the provisions of Title I of the ADA, as such suits are barred by the Eleventh Amendment.
Congress can abrogate nonconsenting states' Eleventh Amendment immunity from suit "when it does so pursuant to a valid exercise of its § 5 power." Id. at 364, 121 S.Ct. 955. It is the Court's responsibility "to define the substance of constitutional guarantees," Id. It is therefore the Supreme Court that must determine whether congressional legislation meets the requirements of congruence and proportionality.
In Garrett, the Court examined the legislative history of the ADA and determined that Congress had failed to identify a history and pattern of irrational state discrimination in employment against the disabled. Id. at 368-369, 121 S.Ct. 955. Even if such a pattern were discernible, the remedies that Congress imposed were not congruent or proportional to the targeted violation. Id. at 374, 121 S.Ct. 955. In sum, the Court held that Congress did not validly abrogate the State's sovereign immunity from suit by private individuals for money damages under Title I. The Court explicitly did not reach the question of whether claims under Title II of the ADA were likewise barred. Id. at 360, n. 1, 121 S.Ct. 955.
Following Garrett, various courts of appeal have held that sovereign immunity also bars actions against states under Title II, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. See Wessel v. Glendening, 306 F.3d 203 (4th Cir.2002); Reickenbacker v. Foster, 274 F.3d 974 (5th Cir.2001); Robinson v. Univ. of Akron Sch. of Law, 307 F.3d 409 (6th Cir.2002). Contra, Hason v. Medical Bd. of Cal., 279 F.3d 1167 (9th Cir.2002).[3]
The Eleventh Circuit has not ruled on the issue; however, in Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ., 178 F.Supp.2d 1291 (S.D.Fla.2001), the District Court for the Southern District of Florida held that the analytical framework of Garrett also bars suits by individuals *146 against states under Title II. Id. at 1294-1295. The court further held that "the Eleventh Amendment bars suit against an unconsenting state for injunctive relief as well as for money damages." Id. at 1295. Pursuant to Alden v. Maine, 527 U.S. at 706, 119 S.Ct. 2240, sovereign immunity bars a citizen's suit here in state court to enforce Title II of the ADA and recover money damages for the state's alleged failure to comply with that act.
For the same reasons that Title II of the ADA does not abrogate Florida's sovereign immunity from suit, we hold that the Department of Justice exceeded its rulemaking authority in enacting 28 C.F.R. § 35.130(f), which bars the imposition of any surcharge for accessibility programs and measures. See Brown v. North Carolina Div. of Motor Vehicles, 166 F.3d 698 (4th Cir.1999), cert. denied, 531 U.S. 1190, 121 S.Ct. 1186, 149 L.Ed.2d 103 (2001).
In Brown, the Fourth Circuit affirmed the district court's dismissal of a class action brought by five purchasers of North Carolina handicapped parking placards who had sued to recover a fee charged by the state for the placard. Their claim was the same as the one plaintiffs raised in this case: the fee was alleged to violate 28 C.F.R. § 35.130(f), promulgated under the ADA. In Brown, the Fourth Circuit applied the sovereign immunity analysis used in Seminole Tribe, and later in Garrett,[4] and held that "28 C.F.R. § 35.130(f), which prohibits a state from charging even a modest fee to recover the costs of its efforts to aid the handicapped, lies beyond the remedial scope of the Section 5 [of the Fourteenth Amendment] power." The court held that the regulation banning all surcharges "redefine[d] the Equal Protection Clause, transforming it from a prohibition on invidious state action into a charter of positive rights. Such a step, however, is beyond the scope of the Fourteenth Amendment." Brown, 166 F.3d at 707. We adopt the holding and rationale of Brown.
Plaintiffs also sued state officers in their individual capacities, and argue that sovereign immunity does not bar prospective injunctive relief. See Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Although that general statement is true, because the regulation is invalid, prospective relief does not lie.[5]
In conclusion, we hold that because Title II of the ADA did not abrogate Florida's sovereign immunity from citizens' suits, and because 28 C.F.R. § 35.130(f) itself is invalid, the State could lawfully impose and collect a fee for handicapped placards. Plaintiffs are therefore not entitled to an award of damages consisting of placard *147 fees already collected or the equitable relief sought.
We recognize that this result may seem harsh, as the ADA was designed as remedial legislation to address the prejudice and obstacles that people with impairments confront on a daily basis.
One of the undoubted achievements of statutes designed to assist those with impairments is that citizens have an incentive, flowing from a legal duty, to develop a better understanding, a more decent perspective, for accepting persons with impairments or disabilities into the larger society. The law works this way because the law can be a teacher. So I do not doubt that the Americans with Disabilities Act of 1990 will be a milestone on the path to a more decent, tolerant, progressive society.
Garrett, 531 U.S. at 375, 121 S.Ct. 955 (Kennedy, Justice, concurring).
However, "[t]he predicate for money damages against an unconsenting state in suits brought by private persons must be a federal statute enacted upon the documentation of patterns of constitutional violations committed by the State in its official capacity. That predicate ... has not been established." Id. at 376, 121 S.Ct. 955.
We reverse the order granting summary judgment for plaintiffs on all counts, and remand with directions to grant the agency's cross motion for summary judgment.
REVERSED AND REMANDED WITH DIRECTIONS.
NOTES
[1] "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United states; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. IV, § 1.
[2] Title I of the ADA provides that "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).
[3] "Stubbornly extending enforcement of Title II of the Americans with Disabilities Act ("ADA") against the Nine Western States, today's opinion blithely ignores recent Supreme Court precedent and follows superseded cases of our court instead. It bears repeating: This decision cannot possibly be right." Hason v. Medical Bd. of Cal., 294 F.3d 1166, 1167 (O'Scannlain, Judge, dissenting from the denial of the petition for rehearing en banc).
[4] It is interesting to note that the Supreme Court did not deny certiorari in Brown until after it had decided Garrett.
[5] Assuming that the regulation in question was somehow enacted pursuant to an exercise of congressional power to regulate interstate commerce, it would raise grave constitutional concerns concerning the scope of that power when used exclusively to regulate state governments acting in their governmental capacity. See Printz v. United States, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997); New York v. United States, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120(1992). Courts should not defer to an agency construction of a statute that would create serious constitutional questions absent a clear statement of constitutional intent. See Solid Waste Agency of N. Cook County v. U.S. Army Corps of Engineers, 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001). Title II contains no clear statement of intent to strip states of their traditional authority to charge fees for state services. Rather than attempt to determine whether and under what circumstances Congress can so act, we conclude that the regulation exceeds the rulemaking authority of the Department of Justice.