No. 36,233

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WYANDOTTE, *Plaintiff*, v. A. S. FERGUSON, as County Treasurer of Wyandotte County, *Defendant.*

(151 P. 2d 694)

Opinion filed September 30, 1944.

*J. E. Schroeder,* county counsellor, argued the cause, and *A. B. Mitchell,* attorney general, and *A. B. Howard,* assistant county counsellor, were on the briefs for the plaintiff.

*Thomas M. Van Cleave* and *Elmer E. Martin,* both of Kansas City, argued the cause for the defendant.

The opinion of the court was delivered by

Hoch, J.: This is an original proceeding in mandamus. The county commissioners of Wyandotte county seek a writ directing the county treasurer to deposit in the general fund of the county, credited to an "automobile fee fund," the fees which he collects under G. S. 1943 Supp., 8-145—such section being a part of the statutes relating to the registration of motor vehicles (G. S. 1943 Supp., 8-126 to 8-153)—and to subject to the board's supervision and control all expenditures made in administering the statute. The county treasurer answers that such fees are properly deposited, currently, in a special fund not a part of the general fund of the county, and that he alone is responsible for administrative expenditures. The issue turns upon construction of the statute.

In view of the public nature of the controversy and the desirability of an early decision the question was given prompt consideration following oral arguments at the July session. Soon thereafter decision was announced, the writ being denied, with a statement that formal opinion would be handed down later.

The material facts are not in dispute. Prior to June 9, 1944, the county treasurer, A. S. Ferguson, had currently deposited in the Commercial National Bank of Kansas City—a bank designated by the board as a depository of county funds—the fees collected under the statute. Such fees were deposited in the general fund of the county but credited on the treasurer's books to an automobile fee fund.

It appears that some time prior to June 9, 1944, the board had refused to allow a claim which had been approved by the county auditor covering certain supplies furnished, upon order of the treasurer, in connection with administration of the act. Thereupon the claimant brought action upon the claim, in the district court, against

the treasurer. In that action the treasurer was represented by the county attorney and in his answer admitted that the supplies in question had been ordered by him; averred that the supplies were needed in administering the act and were used exclusively for that purpose, that the funds collected were at all times deposited in the county fund in his name as county treasurer, that his books at all times showed the amount credited to fees collected under the act, that he was not indebted to the claimant and that the claim should be allowed and paid by the board. Any question as to the merits of the controversy involved in that litigation is not before us and this brief recital concerning it is made solely to indicate the origin and background of the instant action. The court found for the claimant and held that the treasurer is charged by statute with administering the act and is responsible, as custodian, for the money collected under it.

On June 9, 1944, following the judgment rendered against him on the claim, the treasurer transferred—without authorization therefor from the board—to a special fund the balance in the general fund credited on his books to automobile fees. Such balance amounted to $3,543.50. Such special fund, deposited in the same bank, was designated "A. S. Ferguson, County Treasurer, Custodian of State Auto Funds." Whereupon the county commissioners brought the instant proceeding to test their rights and responsibilities and those of the treasurer under the act.

The section in controversy, G. S. 1943 Supp., 8-145, is as follows:

"All registration and certificate of title fees shall be paid to the county treasurer of the county in which the applicant for registration resides or has his office or principal place of business within this state, and the said county treasurer shall issue his receipt in triplicate, on blanks to be furnished by the department, one copy of which shall be filed in the county treasurer's office, one copy to be delivered to the applicant, and the county treasurer shall forthwith transmit the original copy, together with fifteen cents for each motor vehicle and each motor vehicle dealer's license application, and fifteen cents for each motorcycle license application, and fifteen cents for each application for transfer of license number plates, and fifteen cents for each application for registration of a trailer, semi-trailer, and pole trailer, and thirty cents for each application for a certificate of title to the vehicle commissioner. *The county treasurer shall deposit* twenty cents of each license application, ten cents out of each application for transfer of license number plates and twenty cents out of each application for a certificate of title, collected by him under this act, *in a special fund, which fund is hereby appropriated for the use of the county treasurer in paying for necessary help and expenses incidental to the administration of his duties in accordance with the provisions of this law*: PROVIDED, That *any*

*balance* remaining in such fund *at the close of any calendar year* shall be withdrawn and *credited to the general fund of the said county.* The county treasurer shall remit the remainder of all such registration and certificate of title fees to the state treasurer, to be credited to the highway fund." (Italics supplied.)

The contentions of the board, petitioner here, may be summarized as follows:

(a) The fees collected under section 8-145 are public moneys, defined as follows by G. S. 1935, 9-301:

"That all moneys which shall come into the hands of any officer of any county, township, school district, city or village, or any municipal or public corporation or any other political subdivision within this state, pursuant to any provision of law authorizing such officer to collect or receive the same, shall be deemed public moneys within the meaning of this act."

(b) Being public moneys such fee collections must be deposited in compliance with G. S. 1935, 9-303, the pertinent provision of which is as follows:

"That upon designation of any depository or depositories in compliance with the provisions of this act, it shall be the duty of the officer, as provided by section 1 (9-301) of this act, of any political subdivision within this state to deposit all public moneys coming into his hands, therein in his name and his official title."

(c) Such fee collections are "county funds" and must be deposited as such, as required by G. S. 1943 Supp., 19-530, the pertinent provisions of which are as follows:

"That in all counties of this state the county treasurer shall deposit daily all the funds and moneys whatsoever kind that shall come into his possession by virtue of his office as such county treasurer, in his name as such treasurer, in one or more responsible banks located in the county and designated by the board of county commissioners as county depositories, and no interest shall be paid thereon. . . ."

(d) Control of expenditures in connection with the administration of the county treasurer's duties under section 8-145 is in the board, under the provisions of G. S. 1935, 19-229, which is as follows:

"The boards of county commissioners of the several counties of this state shall have exclusive control of all expenditures accruing, either in the publication of delinquent tax lists, treasurer's notices, county printing, or any other county expenditures."

(e) The payment of help necessary in administering section 8-145 is within the control of the board, under the provisions of G. S. 1935, 19-235, which is as follows:

"That whenever the county commissioners of any county in the state of Kansas shall allow any sum of money to any county officer for clerk hire or for an assistant in his office, the said sum so allowed shall be available for the payment of any such clerk hire or assistance, upon itemized and verified vouchers. presented by the clerk or assistant employed in such office, and such voucher shall be approved by the county officer in whose office such clerical work or assistance is performed. All payments made on account of such voucher shall be made directly to the clerk or assistant performing such services, and in no case shall any part of the moneys so allowed by the county commissioners be paid to the county officer in whose office such work or assistance is performed."

The contentions of the county treasurer, defendant, may be summarized as follows:

(a) In the performance of his duties under section 8-145 he is not acting under the general powers and duties imposed upon a county treasurer as an officer of the county, but is acting as an agent of the state designated to perform special duties under the act.

(b) The fees retained under section 8-145 do not become county funds, as currently deposited; it is only the balance remaining at the close of the calendar year which becomes a part of the county funds when withdrawn from the special fund and "credited to the general fund of the county," as provided in the act.

(c) The "special fund" provided for by the act is under his control for the purpose of paying for necessary help and expenses incidental to the administration of his duties under the act.

It is unnecessary to discuss the statute defining public funds. The defendant does not contend that the money collected under section 8-145 does not constitute public funds. On the contrary, he has deposited it as such in a depository bank designated by the board.

As heretofore noted, section 8-145 is a part of the statutes relating to the registration of motor vehicles. (G. S. 1943 Supp., 8-126 to 8-153.) Sketchily stated for present purposes, the act provides for registration of motor vehicles, the issuance of number plates or tags, the issuance of certificates of title, and the collection of license fees, registration and certificate of title fees. General administration of the act is invested in a state vehicle commissioner, and certain duties, including collection of certain fees, is imposed upon county treasurers. The primary use of the fees—after paying administrative expenses—is for building up the state highway fund. After remitting certain amounts to the vehicle commissioner for his administrative use, and after retaining certain amounts to meet his own expenses in discharging his duties under the act, the county treasurer remits the

fee collections to the state treasurer for the benefit of the highway fund. Any balance left in the vehicle commissioner's administrative fund at the close of the calendar year likewise goes to the state highway fund (G. S. 1943 Supp., 8-146). It is thus perfectly clear that the funds accruing under the act are essentially and almost wholly for the benefit of the state and that the county treasurers are used by the state for state purposes.

We find no ambiguity whatever in section 8-145 as to the handling of the fees by the county treasurer or as to the status of that portion retained by him for administrative purposes, or as to where the legislature lodged administrative responsibility. No words could be clearer or more definite. Section 8-145 provides that upon collection of the fees the county treasurer shall transmit forthwith to the vehicle commissioner certain specified amounts (for that official's administrative expenses); that he shall then deposit "in a special fund" (a) twenty cents of each license application; (b) ten cents out of each application for transfer of license number plates, and (c) twenty cents out of each application for a certificate of title.

It is then provided that this "special fund . . . is *hereby appropriated for the use of the county treasurer in paying for necessary help and expenses* incidental to the administration of his duties in accordance with the provisions of this law." (Italics supplied.) The remainder of the fee collections are then remitted to the state treasurer for the highway fund.

The county's only financial interest in the fees is that in case there is a balance, at the close of the calendar year, in the "special fund" created to meet the treasurer's administrative expenses, such balance is to be "withdrawn and credited to the general fund of the said county." This contingent interest is the only interest which the county has in the fees and it is perfectly clear that the treasurer and not the board is charged with administrative responsibilities under the act. This is by no means to say that if the county treasurer makes unlawful expenditures from the special fund or otherwise abuses the power vested in him under the act the county would be without remedy in protection of its contingent interest.

If any doubt existed—and we find none—as to the proper construction of 8-145 on the point at issue, light would be thrown upon the question by the changes made in this section, as revealed by its legislative history. Prior to 1937 the section provided that from the fees collected "the county treasurer shall credit the *general fund*

of the county with ten cents for each license application and shall remit the remainder of all such registration fees to the state treasurer to be credited to the highway fund." (Italics supplied.) (G. S. 1935, 8-145.) There was no reference then in the statute to payment of administrative expenses. In 1937 the section was amended by striking out the provision for deposit in the county's general fund and providing for the creation of a "special fund" and with other provisions identical with the law as it now is (under amendment by Laws 1938, ch. 12, § 2) except as to the amounts to be retained for deposit in the special fund. This clearly indicates the legislative intent that no part of the fees shall be considered as part of the general funds of the county, except as to the balance, if any, remaining in the special fund at the close of the calendar year.

Even if we were to disregard the plain terms of section 8-145 and consider as "county funds" the portion of the fees retained by the treasurer for administrative expenses, we would still have to consider section 19-506 (G. S. 1935), which provides:

"It shall be the duty of the county treasurer to receive all moneys belonging to the county, from whatsoever source they may be derived, and all other moneys which are by law directed to be paid to him. All money received by him for the use of the county shall be paid out by him only on the orders of the board of commissioners, according to law, *except where special provision for the payment thereof is or shall be otherwise made by law.*" (Italics supplied.)

Clearly section 8-145 makes "special provision" for payment of expenses by the treasurer out of the special fund.

Again, even if there were some inconsistency—and we discern none—between section 8-145 and other general statutes relied upon by the petitioner, provisions of section 8-145 should be given effect under the well-established rule that the terms of a statute dealing with a specific subject are controlling as against divergent provisions of a statute having more general application. (*Sherman Co. Comm'rs v. Alden,* 158 Kan. 487, 492, 148 P. 2d 509, and cases there cited.)

The motion for the writ must be denied. It is so ordered.