**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 23 1999**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOEL MARCUS and DAVID V.
MORANDO, on their own behalf and
all others similarly situated,

     Plaintiffs - Appellants,

v.

STATE OF KANSAS,
DEPARTMENT OF REVENUE,

     Defendant - Appellee.

No. 97-3313

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 96-CV-4140-DES)**

---

Stephen R. Senn of Peterson & Myers, P.A., Lakeland, Florida (John J. Miller of
Law Offices of John J. Miller, P.A., Overland Park, Kansas; and Robert Joseph
Antonello of Antonello & Fegers, Winter Haven, Florida, with him on the briefs),
for Plaintiffs-Appellants.

Joseph Brian Cox, Special Assistant Attorney General (Richard Cram with him on
the brief), Legal Services Bureau, Kansas Department of Revenue, Topeka,
Kansas, for Defendant-Appellee.

---

Before **BRISCOE**, **McKAY**, and **LUCERO**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Plaintiffs Joel Marcus and David V. Morando appeal the district court's dismissal of their action pursuant to Federal Rule of Civil Procedure 12(b)(1). Because their claims arose under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, Plaintiffs asserted federal jurisdiction pursuant to 28 U.S.C. § 1331. However, the district court determined that the Tax Injunction Act, 28 U.S.C. § 1341, deprived it of jurisdiction over the subject matter of the action and accordingly dismissed the action without reaching its merits.

I.

Title II of the ADA requires public entities to ensure that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities" provided by the entities. 42 U.S.C. § 12132. Congress directed the Department of Justice to develop regulations to implement the public services provisions of Title II. See 42 U.S.C. § 12134(a).[1] In accordance with Congress' mandate, the Department of Justice developed regulations requiring that where parking is

---

[1]The regulations enacted by the Department of Justice are entitled to substantial deference. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984). "Moreover, because Congress mandated that the ADA regulations be patterned after the section 504 coordination regulations [of the Rehabilitation Act], the former regulations have the force of law." Helen L. v. DiDario, 46 F.3d 325, 332 (3d Cir.), cert. denied, 516 U.S. 813 (1995).

provided for public buildings, a certain number of parking spaces on "the shortest accessible route of travel *from adjacent parking* to an accessible entrance" must be specially designated for people with disabilities. 28 C.F.R. Ch. 1, pt. 36, App. A § 4.6.2 (Accessibility Guidelines for Buildings and Facilities). The Department of Justice regulations further provide:

> A public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the cost of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.

Id. § 35.130(f). The intent of this surcharge provision is to "prevent[] disabled persons from being denied access to ADA-mandated benefits or services because they do not have the funds to pay for them, and [to] spread[] the costs of such benefits or services to all taxpayers." Thrope v. Ohio, 19 F. Supp.2d 816, 819 (S.D. Ohio 1998) (citing McGarry v. Director, Dep't of Revenue, Mo., 7 F. Supp.2d 1022, 1028 (W.D. Mo. 1998)).

To comply with the ADA regulations set forth above, the State of Kansas has enacted a statutory scheme governing the provision of parking accommodations for individuals with disabilities. Under the Kansas scheme, persons who qualify as "individuals with disabilities" may park in specially designated parking spaces so long as they have an identification card and display a special license plate, a permanent parking placard, or a temporary placard on or

in their vehicles.  See Kan. Stat. Ann. §§ 8-1,124 & 8-1,125(a).  Both the license plates and the placards must "display the international symbol of access to the physically disabled."  Id. § 8-1,125(a).  Using a designated parking space without a special license plate or placard is punishable as a misdemeanor.  See id. § 8-1,129.

Other than the general vehicle registration fee charged to all automobile owners, there is no additional charge for the licence plate entitling the holder to use parking accommodations set aside for people with disabilities.  See id. § 8-1,125(b).  To obtain a placard and an identification card, however, qualified individuals must pay a total of $5.25, along with an additional $5.25 renewal charge every three years.  The first portion of the $5.25 assessment consists of a "service fee" in the amount of $2.25 which is paid to the county treasurer.  See id. § 8-145d.  This portion of the assessment is imposed on all persons applying for vehicle registration or renewal, not only on individuals applying for disabled parking placards.  See id.  County treasurers must deposit the $2.25 into "the special fund created pursuant to K.S.A. [§] 8-145."  Id.  Section 8-145 expressly appropriates the "special fund" "for the use of the county treasurer in paying for necessary help and expenses incidental to the administration of duties in accordance with the provisions of this law and extra compensation to the county treasurer for the services performed in administering the provisions of this act."

Id. § 8-145(b).  If there is a balance in the fund at the close of a calendar year, the

money is "withdrawn and credited to the general fund of the county."  Id.  The

money in the general fund is then remitted to the secretary of revenue, deposited

with the state treasurer, and credited to the state highway fund.  See id. § 8-

145(c).

The remaining portion of the $5.25 charge is authorized by statute.  See id.

§ 8-1,125(c) ("The secretary of revenue may adopt rules and regulations

prescribing a fee for placards and individual identification cards issued pursuant

to this section . . . .").  Accordingly, the Kansas Department of Revenue

promulgated the following regulation:

> The fee for any placard issued to a handicapped person or any person
> responsible for the transportation of a handicapped person pursuant
> to L. 1986, Ch. 36, Sec. 1 shall be $2.  The fee for any individual
> identification card issued to a handicapped person pursuant to L.
> 1986, Ch. 36, Sec. 2 shall be $1.

Kan. Admin. Regs. § 92-51-40.  The statute authorizing the collection of these

funds indicates that these fees "shall not exceed the actual cost of issuance" of the

identification cards and placards.  See Kan. Stat. Ann. § 8-1,125(c).

Plaintiffs are citizens of the State of Kansas and both qualify as persons

with disabilities within the meaning of section 8-1,124 of the Kansas Statutes.  In

pursuing this action, they also seek to represent a class of persons who similarly

qualify as persons with disabilities under section 8-1,124.  Defendant State of

Kansas, Department of Revenue, is responsible for the administration of the statutory scheme at issue in this case. In their complaint, Plaintiffs alleged that Defendant's imposition of a fee for parking placards and individual identification cards violates 42 U.S.C. § 12132 of the ADA and 28 C.F.R. § 35.130(f), the regulatory surcharge provision. Plaintiffs sought injunctive and declaratory relief and repayment with interest of the monies collected by Defendant from Plaintiffs and their class members in violation of the ADA. Defendant filed a motion to stay discovery and class certification shortly after filing its answer to the complaint. Defendant argued that because the primary issues raised were ones of law and because "legal briefing or dispositive motions" would resolve these issues, discovery was unnecessary. Appellant's App. at 21B. Plaintiffs opposed the motion to stay class certification but indicated that a stay of discovery might be appropriate if the parties could stipulate to the relevant facts. The district court granted Defendant's motion to stay discovery and class certification and directed the parties to file stipulated facts. Consequently, the parties submitted a stipulation of the facts relevant to this dispute.

After Plaintiffs filed a motion for summary judgment, Defendant filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant advanced several arguments in support of its motion. The district court granted Defendant's motion to dismiss based on the argument

that the charge for the placards and identification cards was a tax and not a regulatory fee and that, as such, the Tax Injunction Act deprived the court of subject matter jurisdiction. See Marcus v. Kansas, Dep't of Revenue, 980 F. Supp. 398, 402-03 (D. Kan. 1997). The Tax Injunction Act provides in full: "The district courts shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

In reaching its conclusion that the charge was a tax, the district court examined each component of the charge. Initially, the court noted that the $2.25 assessment collected by county treasurers as a "service fee" did not bear a relation to the cost of the service provided nor did it appear to be regulatory in nature. See Marcus, 980 F. Supp. at 402. The court also remarked that the $2.25 assessment is imposed not only on persons applying for disabled parking placards but also on all persons applying for vehicle registration. See id. The court believed that "[s]uch general application may indicate a revenue raising intent." Id. The court then stated that the remaining $2.00 for the placard and the $1.00 for the identification card, which are authorized by section 92-51-40 of the Kansas Administrative Regulations, also "bear[] no relation to cost." Id. The court justified this conclusion by stating that at least a portion of this money is directed to the State Highway Fund, which, "in turn, is used for expenditures that

ultimately benefit the general public." Id. (citing Kan. Stat. Ann. § 68-416(b)(3)). The court concluded that, even if some portion of the fee were regulatory in nature, it could not assert jurisdiction over such portion "without 'doing violence to the revenue raising provisions of the measure.'" Id. at 403 (citations omitted). The court went on to explain that even if the Tax Injunction Act applies, federal courts may still assert jurisdiction if the state fails to provide a "plain, speedy, and efficient remedy" in the state courts. Id. Because Plaintiffs did not allege the absence of such a remedy, however, this exception to the Tax Injunction Act did not apply. See id.

On appeal, Plaintiffs contend that: the district court should have allowed discovery on the issue of whether the charge at issue in this case is a regulatory fee or a tax for purposes of the Tax Injunction Act; the district court's ruling that the charge at issue was a regulatory fee and not a tax was erroneous in any event; and statements of congressional intent surrounding the Tax Injunction Act show that the Act was not meant to preclude federal jurisdiction in cases like this one. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

Our review of the district court's dismissal for lack of subject matter jurisdiction is de novo. See Painter v. Shalala, 97 F.3d 1351, 1355 (10th Cir. 1996). The Federal Rules of Civil Procedure instruct that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the

-8-

subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3).

Because the jurisdiction of federal courts is limited, "there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." Penteco Corp. v. Union Gas Sys., Inc., 929 F.2d 1519, 1521 (10th Cir. 1991). "A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking." Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974).

II.

The issue before us is whether a state-imposed assessment for disabled parking placards constitutes a tax or a regulatory fee for purposes of the Tax Injunction Act. The resolution of this issue is determinative of whether federal jurisdiction exists in this case. The Tax Injunction Act imposes a "broad limitation on federal court interference with state collection of taxes [and] is not limited to injunctive relief. The Tax Injunction Act bars declaratory relief, and suits for damages as well." Brooks v. Nance, 801 F.2d 1237, 1239 (10th Cir. 1986) (internal citations omitted). The purposes of the Act are "to promote comity and to afford states the broadest independence, consistent with the federal constitution, in the administration of their affairs, particularly revenue raising."

Wright v. McClain, 835 F.2d 143, 144 (6th Cir. 1987); accord Collins Holding

Corp. v. Jasper County, S.C., 123 F.3d 797, 799 (4th Cir. 1997) (explaining that

the Tax Injunction Act "reflects the importance of the taxing power to the

operation of state governments" and the goal of preventing federal courts from

interfering with state revenue collection); Thrope, 19 F. Supp.2d at 822 ("The Tax

Injunction Act is based on principles of federalism and is designed to prevent a

federal court from interfering with the administration of a state tax system.").

Thus, the Tax Injunction Act "operates to divest the federal courts of subject

matter jurisdiction over claims challenging state taxation procedures where the

state courts provide a 'plain, speedy and efficient remedy.'" Lussier v. Florida,

Dep't of Highway Safety & Motor Vehicles, 972 F. Supp. 1412, 1417 (M.D. Fla.

1997) (citation omitted).[2]

---

[2]This court previously has noted that "the statutory limitations of the Tax Injunction Act are not jurisdictional; rather, they define the scope of remedies a federal court may grant in a suit challenging taxes levied under state law." ANR Pipeline Co. v. LaFaver, 150 F.3d 1178, 1186 n.8 (10th Cir. 1998), cert. denied, __ S. Ct. __, 1999 WL 24700 (U.S. Jan. 25, 1999); see also id. at 1191 ("[T]he Act clearly functions as a limitation on the equitable remedies a federal court may provide in a property tax dispute that otherwise has appropriate federal court subject-matter jurisdiction, i.e., federal question jurisdiction or diversity jurisdiction."). However, the United States Supreme Court has stated that it has "interpreted and applied the Tax Injunction Act as a 'jurisdictional rule' and a 'broad jurisdictional barrier.'" Arkansas v. Farm Credit Servs. of Cent. Ark., 520 U.S. 821, 825 (1997) (quoting Moe v. Confederated Salish & Kootenai Tribes, 425 U.S. 463, 470 (1976)); see also Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 522 (1981) ("[T]he Act . . . [is] first and foremost a vehicle to limit

(continued...)

To date, no federal circuit court has addressed the precise issue of whether assessments imposed for disabled parking placards constitute taxes or fees under the Tax Injunction Act.[3] Among the federal district courts to address the issue,

[2](...continued)
drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes."); Brooks, 801 F.2d at 1240-41 (holding that Tax Injunction Act deprived federal district courts of subject-matter jurisdiction in action involving tax on cigarettes); May v. Supreme Court of Colo., 508 F.2d 136, 137 (10th Cir. 1974) (stating that "28 U.S.C. § 1341 does not operate to confer jurisdiction but instead limits jurisdiction which might otherwise exist"), cert. denied, 422 U.S. 1008 (1975). For example, the Supreme Court held in California v. Grace Brethren Church, 457 U.S. 393, 396 (1982), that the Tax Injunction Act barred the federal district court from exercising jurisdiction over the case. In accordance with these Supreme Court precedents, we treat the Tax Injunction Act as a bar to federal jurisdiction over cases involving the enjoinment, suspension, restraint, levy, or collection of taxes imposed by states. See 28 U.S.C. § 1341.

[3]The Court of Appeals for the Fourth Circuit recently affirmed the dismissal of a lawsuit involving an ADA challenge to the charges imposed for handicapped parking placards by the State of North Carolina. See Brown v. North Carolina Div. of Motor Vehicles, __ F.3d __, 1999 WL 66089, *8-*9 (4th Cir. Feb. 12, 1999) (holding that the suit was barred because the state was entitled to sovereign immunity under the Eleventh Amendment). But cf. Alsbrook v. City of Maumelle, Ark., 156 F.3d 825, 830-31 (8th Cir.) (holding that defendant was not immune from suit because Congress did not exceed its powers under Section 5 of the Fourteenth Amendment in enacting the ADA), vacated on reh'g en banc (Nov. 12, 1998); Seaborn v. Florida, Dep't of Corrections, 143 F.3d 1405, 1407 (11th Cir. 1998) (concluding that states do not have Eleventh Amendment immunity from suits filed under the ADA), cert. denied, __ S. Ct. __, 1999 WL 80727 (Feb. 22, 1999); Coolbaugh v. Louisiana, 136 F.3d 430, 438 (5th Cir.) (same), cert. denied, __ U.S. __, 119 S. Ct. 58 (1998); Clark v. California, 123 F.3d 1267, 1270-71 (9th Cir. 1997) (same), cert. denied sub. nom Wilson v. Armstrong, __ U.S. __, 118 S. Ct. 2340 (1998). In Brown, the dismissal of the case was based on a finding that 28 C.F.R. § 35.130(f) exceeded Congress' powers under Section 5 of the Fourteenth Amendment and that, as a result,
(continued...)

however, a clear split has developed.  At least in part, the split appears to be due

to the precise manner in which the collected funds are used under each state's

statutory scheme.  In addition to the District of Kansas decision on review here,

see Marcus, 980 F. Supp. at 402-03, two other district courts have determined that

assessments imposed by states on applicants for disability parking placards

constitute "taxes" for purposes of the Tax Injunction Act, resulting in a bar to

federal jurisdiction.  See Hedgepeth v. Tennessee, __ F. Supp.2d __, 1998 WL

966124, *3 (W.D. Tenn. Dec. 29, 1998) (holding that the Tax Injunction Act

barred federal jurisdiction partly because $20.50 handicap placard fee and $3.00

renewal fee apportioned into state's highway fund, general fund, police pay

supplement fund, and trooper safety were revenue raising measures and thus

constituted taxes); Lussier, 972 F. Supp. at 1420 (holding that revenue raising was

the dominant purpose of statutory scheme under which the majority of the monies

collected was remitted to the Department of Highway Safety and that "the

ultimate use of the funds collected . . . make[s] clear that the funds are spent on

general public purposes").  However, two additional federal district courts

recently reached the opposite conclusion.  See Banta v. Louisiana, No. 98-765-A,

---

[3](...continued)
Congress could not abrogate state sovereign immunity.  See Brown, 1999 WL
66089, at *8-*9.  Because neither of the parties in this case raised the issue of
sovereign immunity, Brown has no bearing on this decision.

slip op. at 4-5 (M.D. La. Jan. 7, 1999) (denying plaintiffs' motion to remand to state court because Tax Injunction Act did not preclude federal jurisdiction over suit involving regulatory fees for hang tags, identification cards, and special license plates which were explicitly tied to the cost of issuance); Thrope, 19 F. Supp.2d at 823 (holding that Tax Injunction Act did not bar federal jurisdiction because $5.00 assessment was charged only to applicants for parking placards and was designed to cover the regulatory costs of issuing the placards, even though the charge was deposited into the bureau of motor vehicles fund). Several other federal district courts have concluded that charges for parking placards similar to those imposed in this case violate the ADA, but none of these courts have addressed the Tax Injunction Act. See Duprey v. Connecticut, Dep't of Motor Vehicles, 28 F. Supp.2d 702, 708-11 (D. Conn. 1998) (granting plaintiff's cross-motion for summary judgment and holding that fee violated ADA because it constituted a surcharge, was imposed only on persons with disabilities, and was used to cover the costs of ADA-mandated measures); McGarry, 7 F. Supp.2d at 1029 (granting plaintiffs' summary judgment motion and concluding that $2.00 fee imposed for parking placards violated ADA); Dare v. California, Dep't of Motor Vehicles, No. CV96-5569 JSL, 1997 U.S. Dist. LEXIS 23158, at *1-*3 (C.D. Cal. May 30, 1997) (granting partial summary judgment in favor of plaintiffs and holding that state's imposition of biennial $6.00 fee for disabled

-13-

parking placards violates surcharge provision of ADA).

III.

In determining whether the Tax Injunction Act bars federal jurisdiction over a suit challenging a state assessment, we must determine whether the assessment at issue is a tax or a regulatory fee. See Collins Holding, 123 F.3d at 799. If the assessment is a tax, then the Act applies and operates to bar federal jurisdiction unless the state does not provide a plain, speedy and efficient remedy. See id. Whether the assessment is a tax or a regulatory fee is a question of federal law. See Wright, 835 F.2d at 144. The label given by a state for an assessment or charge is not dispositive. See id.; accord Cumberland Farms, Inc. v. Tax Assessor, 116 F.3d 943, 946 (1st Cir. 1997). Instead, the critical inquiry focuses on the purpose of the assessment and the ultimate use of the funds. See Collins Holding, 123 F.3d at 800 ("[T]he heart of the inquiry centers on function, requiring an analysis of the purpose and ultimate use of the assessment."); Hager v. City of West Peoria, 84 F.3d 865, 870-71 (7th Cir. 1996) ("Rather than a question solely of *where* the money goes, the issue is *why* the money is taken."); San Juan Cellular Tel. Co. v. Public Serv. Comm'n, 967 F.2d 683, 685 (1st Cir. 1992) (stating that in close cases courts "have tended . . . to emphasize the revenue's ultimate use").

-14-

[T]he classic tax sustains the essential flow of revenue to the government, while the classic fee is linked to some regulatory scheme. The classic tax is imposed by a state or municipal legislature, while the classic fee is imposed by an agency upon those it regulates. The classic tax is designed to provide a benefit for the entire community, while the classic fee is designed to raise money to help defray an agency's regulatory expenses.

Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss., 143 F.3d 1006, 1011 (5th Cir. 1998) (footnotes omitted) (holding that impact fee imposed by City of Madison constituted a tax for purposes of Tax Injunction Act); accord Folio v. City of Clarksburg, W.Va., 134 F.3d 1211, 1217 (4th Cir. 1998) ("A tax is generally a revenue-raising measure, imposed by a legislative body, that allocates revenue 'to a general fund, and [is] spent for the benefit of the entire community.' A user fee . . . is a 'payment[] given in return for a government provided benefit' and is tied in some fashion to the payor's use of the service." (citations omitted)); San Juan Cellular, 967 F.2d at 685 (stating that the classic tax raises money which is contributed to a general fund and spent for the benefit of the whole community while the classic fee serves regulatory purposes and "is imposed by an agency upon those subject to its regulation").

We begin our analysis with the $2.25 portion of the assessment imposed by section 8-145d of the Kansas Statutes. While some part of the funds collected pursuant to section 8-145d may ultimately reach the general fund of the county, see Kan. Stat. Ann. § 8-145(b), or the state highway fund, see id. § 8-145(c), the

-15-

governing statute expressly ties these monies to the administration of the motor vehicle registration laws.  See id. § 8-145(b) (explaining that the "special fund" is "appropriated for the use of the county treasurer in paying for necessary help and expenses incidental to the administration of duties" under this law); see also Board of Comm'rs v. Ferguson, 151 P.2d 694, 697 (Kan. 1944) (describing "special fund" under section 8-145 as "created to meet the [county] treasurer's administrative expenses"); XVI Kan. Op. Att'y. Gen. 27 (1982) (stating that the fees collected pursuant to section 8-145 are deposited into a special fund which is used to pay for necessary help and expenses incidental to administering the motor vehicle registration laws).  Only if there is a balance remaining at the end of the year will any of these monies reach the general county fund.  See Kan. Stat. Ann. § 8-145(b)-(c).  Because there is no guarantee that any funds will remain in the special fund at the close of any given calendar year, there is no guarantee that any of the monies remitted to the special fund will reach the general county fund or the state highway fund in any given year.  The Kansas Supreme Court has confirmed this interpretation of section 8-145 by holding that the legislative intent surrounding the statute demonstrates that "no part of the fees shall be considered as part of the general funds of the county, except as to the balance, if any, remaining in the special fund at the close of the calendar year."  Ferguson, 151 P.2d at 697 (declining to issue writ of mandamus to county treasurer directing him

to deposit fees collected pursuant to section 8-145 into general fund of the county). Both the relevant statutory language and Kansas case law make clear that the $2.25 portion of the assessment is used primarily to cover the costs of administering the motor vehicle registration laws. Therefore, we cannot say that the dominant purpose of these funds is revenue raising, nor can we conclude that the funds benefit the general public. While the funds may benefit that portion of the public which owns and operates motor vehicles, the essential character of the $2.25 charge is regulatory. Not only are the charges expressly linked to a specific regulatory scheme but also the monies collected pursuant to the charge are used to defray the expenses associated with administering the scheme. As such, we conclude that the assessment constitutes a fee for purposes of the Tax Injunction Act.

The remaining portion of the $5.25 assessment charged for disabled parking placards and identification cards consists of the $3.00 imposed by section 92-51-40 of the Kansas Administrative Regulations. Neither the governing statutes nor the implementing regulations indicates the ultimate use of the monies collected pursuant to section 92-51-40. Further, although the Department of Revenue enacted section 92-51-40, the regulation imposing the $3.00 assessment, it is not clear to whom the funds are remitted. Both the district court and Defendant assert that at least some portion of these monies flows to the state highway fund. See

Marcus, 980 F. Supp. at 402; Appellee's Br. at 2. Presumably, the court and Defendant base this conclusion on the assumption that the charges at issue constitute either "registration and certificate of title fees" under section 8-145(a) or are deposited into the special fund under section 8-145(b) of the Kansas Statutes.

In our view, the ultimate disposition and use of the funds collected pursuant to section 92-51-40 is an issue that can only be resolved by discovery. However, like the $2.25 portion of the total assessment, these charges are expressly linked to defraying administrative costs. The Kansas statute authorizing the imposition of these charges explicitly mandates that fees imposed by the Department of Revenue "shall not exceed the actual cost of issuance." Kan. Stat. Ann. § 8-1,125(c). Moreover, even if the fees imposed pursuant to section 92-51-40 are appropriated to the special fund and distributed accordingly, then the reasoning we employ above with respect to the $2.25 portion of the assessment also applies to the $3.00 charge. In other words, the assessment is expressly tied to the administrative costs of a specific regulatory scheme and, therefore, its essential character is regulatory. We conclude that the charges imposed pursuant to section 91-52-40 constitute fees for purposes of the Tax Injunction Act.

Because the Tax Injunction Act does not apply to this action, we reverse the judgment of the district court and remand so that the court may proceed with

the merits.[4]

**REVERSED** and **REMANDED**.

---

[4]Because we hold that the Tax Injunction Act does not apply to this action, we need not reach the question of whether Kansas provides a plain, speedy, and efficient remedy in its courts.