# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00370-CV

**Reagan National Advertising of Austin, Inc. d/b/a Reagan National Advertising, Appellant**

**v.**

**City of Austin, Texas; and Marc A. Ott, being sued in his Official Capacity, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. D-1-GN-12-001211, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## O P I N I O N

Reagan National Advertising of Austin, Inc. d/b/a Reagan National Advertising (Reagan) sued the City of Austin and city manager Marc A. Ott, in his official capacity (collectively, the City), alleging that the City's "billboard registration fee" amounts to an unconstitutional occupation tax against Reagan. The trial court signed a final judgment ordering that Reagan take nothing on its claims. In four issues on appeal, Reagan contends that none of its claims were time-barred and that the trial court erred in determining that the assessment against Reagan was a proper regulatory fee. Because we conclude that a prior federal-court ruling precluded relitigation of whether the assessment was a regulatory fee or a tax and that none of Reagan's claims are time-barred, we will reverse the trial court's judgment and render judgment in Reagan's favor in part and remand for the consideration of attorney's fees.

## BACKGROUND[1]

Reagan owns and operates billboards in the Austin area. The City regulates these billboards and requires them to be registered. Before amending its regulations in 2008–2009, the City assessed a "billboard registration fee" of $220 per billboard every two years (an effective rate of $110 per year). After the amendments, the City collected an assessment of $200 per billboard per year, although the City could not point to anything it had done by way of a study, budget, or survey to determine the costs associated with the City's registration program.

In 2009, Robert Rowan, a City employee, analyzed the $200 billboard assessment. In an email sent to his superiors in November 2009, Rowan concluded that an assessment of $140 would be "a more reasonable fee" and would "close the gap between the revenue and expenditures of running this program." Daniel Cardenas, another City employee, later conducted a study concluding that $242 per year was the proper assessment. After communicating with his superior, Cardenas raised his estimate to $352 per year. In 2012, the City lowered the assessment to $190 per year.

Reagan, under protest, paid the $200 billboard assessment each year from 2009 to 2012 and the $190 assessment each year for 2013 and 2014. In April 2010, Reagan sued the City in federal district court, Judge Lee Yeakel presiding, challenging the constitutionality of the billboard assessment. After Reagan filed suit, the City retained a consulting firm to conduct a study of the billboard assessment. This firm concluded that "the cost of service for administering the billboard registration fee is $190." Meanwhile, Reagan retained its own consultant, who determined that the assessment should be about $43 per year.

---

[1] Unless otherwise noted, all facts recited herein are undisputed.

2

On November 30, 2011, following a bench trial, Judge Yeakel issued a final judgment dismissing Reagan's suit without prejudice for lack of jurisdiction. In his findings of fact and conclusions of law, Judge Yeakel concluded that the City's billboard assessment is a "tax" for purposes of the Tax Injunction Act (TIA) and, therefore, the court lacked subject-matter jurisdiction over Reagan's suit. Under the TIA, federal courts lack subject-matter jurisdiction to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." *See* 28 U.S.C. § 1341; *Washington v. Linebarger, Goggan, Blair, Pena & Sampson, LLP*, 338 F.3d 442, 444 (5th Cir. 2003). On December 29, 2011, the City filed a motion for new trial, which Judge Yeakel denied by an order signed on February 6, 2012.

On April 25, 2012, Reagan filed this suit in the Travis County district court (the trial court). At the ensuing bench trial, Reagan argued that Judge Yeakel's determination that the billboard assessment is a tax was "res judicata" and barred relitigation of whether the assessment is a tax or a regulatory fee. Reagan further argued that, because the assessment is a tax, and because the State of Texas does not levy a tax on the outdoor advertising business, the City's billboard assessment violates the Texas Constitution by levying a tax that exceeds one half of the tax levied by the State on the same business. *See* Tex. Const. art. VIII, § 1(f) ("The occupation tax levied by any county, city or town for any year on persons or corporations pursuing any profession or business, shall not exceed one half of the tax levied by the State for the same period on such profession or business."). Reagan sought a declaration under the Uniform Declaratory Judgments Act that the billboard assessment is an unconstitutional tax, damages under 42 U.S.C. § 1983 consisting of "the

portion of the fees paid under duress that are unconstitutionally excessive," and attorney's fees.[2] The City responded that Judge Yeakel's ruling that the assessment is a tax for purposes of the TIA does not control the question of whether the assessment is a tax under the Texas Constitution and that it is not a tax because it is reasonably related to the cost of billboard regulation. The City also argued that any claims Reagan might have arising from the assessments it paid in 2009 and 2010 were barred by the statute of limitations.

In its final judgment signed on March 31, 2015, the trial court ordered that Reagan take nothing on its claims. The court also issued findings of fact and conclusions of law, in which it found that "[t]he activities performed for the billboard registration program are related to the program" and that "[t]he fee is based on the City's costs for actual activities performed." The trial court also concluded that "Judge Yeakel's ruling based on the [TIA] is not res judicata as to this suit," that "[t]here is a reasonable relationship between the amount of the fee and the City's costs," that "[t]he primary purpose of the fee, in light of the ordinance that authorizes the fee as a whole, is for regulation," and that "[t]he City's fee is reasonable and constitutional." Finally, the court concluded that "Reagan's claims for fees paid in August of 2009 and March of 2010 are time-barred." This appeal followed.

---

[2] Although Reagan's live pleading advanced other theories and causes of action, on appeal Reagan argues only that the billboard assessment violates article VIII, section 1(f).

## DISCUSSION

**Statute of Limitations**

In its third issue on appeal,[3] Reagan contends that the trial court erred in concluding that claims arising from the assessments it paid in 2009 and 2010 are time-barred.

Reagan's claims are governed by a two-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code § 16.003(a); *Lowenberg v. City of Dall.*, 168 S.W.3d 800, 801 (Tex. 2005) (per curiam). Because Reagan paid its assessments for 2009 and 2010 in March 2010 or before and filed this suit in April 2012, more than two years later, its claims for these years are barred unless the statute of limitations was tolled. Reagan argues that a savings clause tolled the statute of limitations because Reagan filed its federal action within the limitations period and then filed this suit in state court within 60 days from the time the federal court's judgment dismissing Reagan's claims for lack of jurisdiction became final. Reagan relies on the tolling provision set forth in section 16.064 of the Texas Civil Practice and Remedies Code, which states the following:

> The period between the date of filing an action in a trial court and the date of a second filing of the same action in a different court suspends the running of the applicable statute of limitations for the period if: (1) because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed or the judgment is set aside or annulled in a direct proceeding; and (2) not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a court of proper jurisdiction.

Tex. Civ. Prac. & Rem. Code § 16.064(a).

---

[3] We address Reagan's limitations argument first given its threshold nature.

In response, the City points out that the federal court signed its judgment dismissing Reagan's claims on November 30, 2011, and Reagan filed this suit on April 25, 2012, more than 60 days later. The City argues that because Reagan did not file this suit within 60 days after the federal court signed its judgment, section 16.064 does not toll the statute of limitations and Reagan's claims are untimely. Whether section 16.064 tolled the statute of limitations is a question of law we review de novo. *See Brown v. Fullenweider*, 135 S.W.3d 340, 342 (Tex. App.—Texarkana 2004, pet. denied); *see also First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008) ("The construction of a statute is a question of law we review de novo.").

Section 16.064's first requirement is met because the court in which Reagan originally filed this action dismissed the case for lack of jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 16.064(a)(1). Therefore, we must determine whether Reagan filed its state-court action within 60 days of the date when the federal court's judgment "bec[ame] final." *See id.* § 16.064(a)(2). As the Texas Supreme Court has recognized, whether a judgment is considered "final" depends on the context. *See Long v. Castle Tex. Prod. Ltd. P'ship*, 426 S.W.3d 73, 78 (Tex. 2014) ("We assess a judgment's finality differently, depending upon the context."); *Street v. Honorable Second Court of Appeals*, 756 S.W.2d 299, 301 (Tex. 1988) ("[T]he term 'final,' as applied to judgments, has more than one meaning."). We are not aware of any precedent from the Texas Supreme Court or from this Court deciding when a federal district court's judgment becomes final for purposes of section 16.064 when, as here, neither party appeals the judgment. *See Vale v. Ryan*, 809 S.W.2d 324, 327 (Tex. App.—Austin 1991, no writ) ("We do not address the question of when a disposition becomes final

6

for purposes of section 16.064 where, for example, a district-court dismissal for lack of jurisdiction is later affirmed on appeal.") (italics removed).[4]

The statute's use of "becomes final" suggests that a judgment is not always final for purposes of the savings clause the instant the judgment is signed or rendered. Otherwise, the legislature would have specifically provided that the tolling period begins on the day the first court signs the judgment. The legislature knows how to use the signing and rendition of a judgment as statutory reference points,[5] but did not choose to do so here.

---

[4] The City relies heavily on *Ruiz v. Austin Independent School District*, No. 03-02-00798-CV, 2004 WL 1171666 (Tex. App.—Austin May 27, 2004, no pet.) (mem. op.). In *Ruiz*, this Court explained that the plaintiffs' claims were time-barred unless a tolling provision applied. *Id.* at *4. The Court then discussed section 16.064 and concluded, "Even with the benefit of this tolling statute, however, the Ruizes failed to satisfy the statute of limitations, for their second lawsuit was not filed until seventy-nine days after the federal court dismissed the first lawsuit." *Id.* While the Court arguably treated section 16.064's 60-day period as beginning when the federal court signed its judgment dismissing the first suit, nothing in the opinion indicates that the litigants contested the date of the judgment's finality. Moreover, there is no indication of whether either party filed any post-judgment motions in the federal court, and there is no explanation of why the judgment became final less than 79 days after being signed.

[5] *See* Tex. Elec. Code § 232.014(b) ("To be timely, an appellant's bond, affidavit, or cash deposit for costs of appeal must be made not later than the fifth day after the date the district court's judgment in the contest *is signed*.") (emphasis added); Tex. Fam. Code § 201.111(a) (providing that referring court shall take action "[n]ot later than the 10th day after the date an associate judge's proposed order or judgment recommending a finding of contempt *is signed*") (emphasis added); *id.* § 201.318(b) ("the date an order or judgment by the referring court *is signed* is the controlling date for the purposes of appeal to or request for other relief from a court of appeals or the supreme court") (emphasis added); Tex. Fin. Code § 304.005(a) ("postjudgment interest on a money judgment of a court in this state accrues during the period beginning on the date the judgment *is rendered* and ending on the date the judgment is satisfied") (emphasis added); Tex. Prop. Code § 24.0052(a) ("the tenant may appeal the judgment of the justice court by filing with the justice court, not later than the fifth day after the date the judgment *is signed*, a pauper's affidavit") (emphasis added); Tex. Tax Code § 43.04 ("If the court finds that the chief appraiser or appraisal review board failed to comply without good cause, the court shall enter an order requiring the chief appraiser or appraisal review board to comply with the deadline not later than the 10th day after the date the judgment *is signed*.") (emphasis added); *id.* § 111.010(d) ("The state is entitled to interest at the rate of 10 percent a year

We need not decide in this case precisely when a federal district court's judgment becomes final for purposes of section 16.064, because here Reagan unquestionably refiled in state court within the statutory timeframe. The federal court denied the City's motion for new trial on February 6, 2012. *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."). Reagan then had 30 days in which it could have filed a notice of appeal. *See* Fed. R. App. P. 4(a)(1)(A) ("In a civil case . . . the notice of appeal . . . must be filed with the district clerk within 30 days after entry of the judgment or order appealed from."); *id.* R. 4(a)(4)(A)(v) (providing that if party timely files motion for new trial under Rule 59, "the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion"). In addition, Reagan still could have filed an additional motion for relief from the federal court's judgment under Rule 60(b). *See* Fed. R. Civ. P. 60(b), (c). We conclude that, for the purposes of section 16.064, the federal court's judgment dismissing Reagan's claims did not become final until at least 30 days from its February 6th order denying the City's motion for new trial.[6] *See Oscar Renda Contracting, Inc. v. H & S Supply Co.*, 195 S.W.3d 772, 776 (Tex. App.—Waco 2006, pet. denied) ("A judgment of dismissal becomes final for purposes of

---

on the amount of a judgment for the state beginning on the day the judgment *is signed* and ending on the day the judgment is satisfied.") (emphasis added).

[6] We note that, in its letter opinion, the trial court announced that the City's affirmative defense of limitations was without merit. The court opined that, "when dismissal by one court begins the running of a deadline to file suit in another court, it only makes sense to begin the deadline when the first court has lost plenary power. Otherwise, a litigant would be required to file suit in the second court while continuing to argue in the first court, perhaps successfully, that the action should remain there." Nevertheless, in its findings of fact and conclusions of law, the trial court concluded, without explanation, that "Reagan's claims for fees paid in August of 2009 and March of 2010 are time-barred."

section 16.064 when it disposes of all issues and parties in the case *and the court's power to alter the judgment has ended*.") (emphasis added); *Vale*, 809 S.W.2d at 326 ("These tolling provisions are remedial in nature and are to be liberally construed."). Therefore, because Reagan filed its state-court suit on April 25, less than 60 days from the time when the federal court's judgment became final, section 16.064 tolled the statute of limitations, and Reagan's claims are not time-barred.

Accordingly, we sustain Reagan's third issue.

**Issue Preclusion**

In its first two issues, Reagan contends that the trial court erred in deciding that the federal court's conclusion that the billboard assessment is a tax did not preclude relitigation of the issue and in holding that the assessment is a constitutional regulatory fee.

Federal law governs the preclusive effect of the federal court's judgment in Reagan's subsequent state-court action. *See Jeanes v. Henderson*, 688 S.W.2d 100, 103 (Tex. 1985) ("Even though the original lawsuit involved both federal and state-related claims, the fact that it took place in federal court requires us to follow the federal law of res judicata."); *Hayes v. Pin Oak Petroleum, Inc.*, 798 S.W.2d 668, 671 (Tex. App.—Austin 1990, writ denied) (per curiam) ("Our analysis of this cause is governed by federal substantive law. Where the earlier judgment was rendered in federal court, we must follow the substantive federal law concerning res judicata and collateral estoppel."). Although the parties use the term "res judicata," (i.e., claim preclusion), the substance of their contentions more precisely concerns a question of issue preclusion—whether the federal court's decision that the billboard assessment constitutes a tax has preclusive effect in state court. The

9

doctrine of issue preclusion "precludes relitigation of only those issues actually litigated in the original action, whether or not the second suit is based on the same cause of action." *Houston Prof'l Towing Ass'n v. City of Hous.*, 812 F.3d 443, 447 (5th Cir. 2016) (internal quotation marks omitted); *see B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1302 (2015) ("This Court has long recognized that the determination of a question directly involved in one action is conclusive as to that question in a second suit.") (internal quotation marks omitted); Restatement (Second) of Judgments § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").

Issue preclusion applies only if four conditions are met:

> First, the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action. Second, the issue must have been fully and vigorously litigated in the prior action. Third, the issue must have been necessary to support the judgment in the prior case. Fourth, there must be no special circumstance that would render preclusion inappropriate or unfair.

*State Farm Mut. Auto. Ins. Co. v. LogistiCare Sols., LLC*, 751 F.3d 684, 689 (5th Cir. 2014) (quoting *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994)). Whether issue preclusion applies is a question of law we review de novo. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 368–69 (2d Cir. 1997).

We must begin, then, by deciding whether the federal court's determination that the billboard assessment is a tax under the TIA involved an issue of fact or law that is identical to the question of whether the assessment is a tax under article VIII, section 1(f) of the Texas Constitution. In determining whether an assessment is a tax under the TIA, federal courts consider whether the

10

assessment is imposed: (1) by an agency or by the legislature, (2) upon those it regulates or upon the community as a whole, and (3) for the purpose of defraying regulatory costs or for general revenue-raising purposes. *See Neinast v. Texas*, 217 F.3d 275, 278 (5th Cir. 2000) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1011 (5th Cir. 1998)); *San Juan Cellular Tel. Co. v. Public Serv. Comm'n of P.R.*, 967 F.2d 683, 685 (1st Cir. 1992). However, federal courts have noted that the third factor, the purpose and use of the assessment, is the "critical factor," especially when the first two factors do not point toward the same conclusion. *See Neinast*, 217 F.3d at 278 ("The third factor, the ultimate use of the funds, thus becomes our critical question."); *Marcus v. Kansas Dep't of Revenue*, 170 F.3d 1305, 1311 (10th Cir. 1999) ("[T]he critical inquiry focuses on the purpose of the assessment and the ultimate use of the funds."). As the Fourth Circuit has explained:

> It is useful to begin with a look at who imposes, administers, and collects the assessment. An assessment imposed directly by a legislature is more likely to be a tax than one imposed by an administrative agency. If responsibility for administering and collecting the assessment lies with the general tax assessor, it is more likely to be a tax; if this responsibility lies with a regulatory agency, it is more likely to be a fee. But the heart of the inquiry centers on function, requiring an analysis of the purpose and ultimate use of the assessment. If the revenue is paid into the state's (or county's) general fund and provides a general benefit to the public, it sounds like a tax. If, on the other hand, the assessment covers only a narrow class of persons and is paid into a special fund to benefit regulated entities or defray the cost of regulation, it sounds like a fee.

*Collins Holding Corp. v. Jasper Cty., S.C.*, 123 F.3d 797, 800 (4th Cir. 1997) (citations omitted).

Here, in his findings of fact and conclusions of law, Judge Yeakel concluded that the first factor suggested that the billboard assessment is a tax because it was imposed by the City's legislative body and that the second factor suggested that the assessment is a regulatory fee

because it was imposed only on billboard owners rather than on the public at large. Turning to the third factor, Judge Yeakel noted that the billboard assessments are deposited into the City's general-revenue fund and that the City has no separate billboard-regulatory fund. He also noted that the parties had presented conflicting evidence at trial concerning whether the assessment was revenue-neutral. Judge Yeakel then made the following findings:

> In reviewing the evidence presented, the Court finds that the record lacks any indication of the City Council's purpose for increasing the [billboard assessment] or the circumstances surrounding the City Council's 2008 passage of the increased amount of the [assessment]. The Court finds that the annual per billboard [assessment] of $200 was set by the City Council, is deposited into the City's general-revenue fund, and is assessed against a narrow class of individuals, billboard owners. Further, given the conflicting evidence presented about the reasonable cost of registering billboards, *the Court finds that the City's [billboard assessment] benefits the entire community rather than only defraying the City's reasonable cost of registering billboards*.

(footnote omitted) (emphasis added). Finally, in a footnote, Judge Yeakel made the following statement:

> Although placing all [billboard-assessment] collections in the City's general-revenue fund does not, standing alone, compel the result that the [assessment] is a tax, it does hamper the City's ability to present persuasive evidence that the [assessment] is not a tax. Placing the collections in the general-revenue fund creates the impression that the collections are available to fund all City programs, gives cause to question the City's after-the-fact calculations of the cost of billboard regulation, and blurs the issue of whether the charge is used for the regulation and benefit of the billboard owners.

Judge Yeakel went on to conclude that the billboard assessment is a tax under the TIA and therefore the court lacked subject-matter jurisdiction over Reagan's suit.

12

We conclude that Judge Yeakel's determination under the third TIA factor that the billboard assessment benefits the entire community rather than only defraying the cost of the City's billboard regulation is identical, for the purposes of issue preclusion, to the question of whether the assessment is a tax under article VIII, section 1(f) of the Texas Constitution. To determine whether an assessment is a tax under article VIII, section 1(f), courts consider whether the primary purpose of the assessment is for regulation or for raising revenue. *See Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 461 (Tex. 1997) ("'The principle of distinction generally recognized is that when, from a consideration of the statute as a whole, the primary purpose of the fees provided therein is the raising of revenue, then such fees are in fact occupation taxes, and this regardless of the name by which they are designated.'") (quoting *H. Rouw Co. v. Texas Citrus Comm'n*, 247 S.W.2d 231, 234 (Tex. 1952)); *City of Hous. v. Harris Cty. Outdoor Advert. Ass'n*, 879 S.W.2d 322, 326 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ("To determine whether an exaction authorized by statute or ordinance constitutes an occupation tax or a license fee, the test is whether the primary purpose of the exaction, when the statute or ordinance is considered as a whole, is for regulation or for raising revenue."). In determining the primary purpose of the assessment, "[t]he critical issue is whether the assessment is intended to raise revenue in excess of that reasonably needed for regulation." *Lewellen*, 952 S.W.2d at 461. "To be reasonable, a license fee cannot be excessive nor more than reasonably necessary to cover the cost of granting the license and of exercising proper police regulation, or it must bear some reasonable relationship to the legitimate object of the licensing ordinance." *City of Houston*, 879 S.W.2d at 326–27 (emphasis removed). Therefore, Judge Yeakel's decision that the billboard assessment raised revenue in excess of the reasonable cost of registering billboards and benefitted the entire community is identical to

13

a determination that the assessment is a tax under article VIII, section 1(f). Thus, the first condition of issue preclusion is met here.

Under the second issue-preclusion condition, we must determine whether the issue of the assessment's status was fully and vigorously litigated in the federal-court action. We conclude that it was. There is no dispute that Judge Yeakel conducted a bench trial, which included the presentation of expert testimony concerning the cost of the billboard registration program. Accordingly, we proceed to the third issue-preclusion condition: whether the issue was necessary to support the judgment in the prior case. Here, Judge Yeakel determined that the first two TIA factors cut in different directions. The third factor was therefore dispositive and, indeed, it is the "critical factor" in a TIA analysis. *See Neinast*, 217 F.3d at 278; *Marcus*, 170 F.3d at 1311. We therefore conclude that Judge Yeakel's determination that the billboard assessment raised revenue in excess of the reasonable cost of registering billboards was necessary to support his judgment that the assessment was a tax and that the court lacked subject-matter jurisdiction over Reagan's suit. Finally, under the fourth issue-preclusion condition, we determine that there were no special circumstance that would render preclusion inappropriate or unfair in this instance. Nothing in the record before us indicates that the City was treated unfairly in the federal-court litigation or that it was anything other than a full and active litigant.

Having determined that each of the four issue-preclusion conditions has been satisfied, we conclude that issue preclusion applies and that the federal court's determinations should have precluded relitigation in the trial court of whether the billboard assessment is a tax under article VIII, section 1(f) of the Texas Constitution. We therefore sustain Reagan's first two issues.

14

Because the City's billboard assessment constitutes a tax on the outdoor advertising business under article VIII, section 1(f), the Texas Constitution provides that it may not exceed half of the tax levied by the State on outdoor advertising. It is undisputed that the State levies no tax on billboards; therefore, the City's billboard assessment violates the Texas Constitution. An unconstitutional tax is void from its inception, so Reagan would ordinarily be entitled to a refund of the entire amount it paid—an amount to which the parties stipulated. *See Wichita Cty. v. Robinson*, 276 S.W.2d 509, 515 (Tex. 1954) (op. on reh'g) (noting "as a general rule a law held unconstitutional is void from the beginning and was never valid and enforceable at any time"); *Colden v. Alexander*, 171 S.W.2d 328, 335 (Tex. 1943) (noting that statute held to be unconstitutional "is absolutely and utterly void in its entirety" and "can have no effect to accomplish anything"). However, Reagan has specifically prayed for a refund of only $198,450.00, which is less than the full amount of the assessment, and we will therefore render judgment in Reagan's favor for that amount.[7] *See State v. Brown*, 262 S.W.3d 365, 370 (Tex. 2008) ("A party generally is not entitled to relief it does not seek.") (citing *Stevens v. Nat'l Educ. Ctrs., Inc.*, 11 S.W.3d 185, 186 (Tex. 2000)).

---

[7] $198,450.00 is the largest refund Reagan has prayed for. We express no opinion on what amount would have been a reasonable and constitutional billboard assessment.

## CONCLUSION

Having sustained Reagan's first, second, and third issues,[8] we reverse the trial court's judgment and render judgment that the billboard assessment violates the Texas Constitution and that Reagan recover $198,450.00 from the City. We also remand the cause to the trial court to determine the amount of attorney's fees, if any, to which Reagan is entitled.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Pemberton and Field

Reversed and Rendered in Part, Reversed and Remanded in Part

Filed: June 15, 2016

_____

[8] In its fourth issue, Reagan contends that the trial court erred in failing to award Reagan the difference between $190 per sign and the amounts Reagan actually paid in 2009–2012. Because we sustain Reagan's other issues, we need not address this contention. Reagan's fourth issue also contends that the trial court erred in failing to award Reagan attorney's fees. We will remand this cause to the trial court for further consideration of whether Reagan is entitled to attorney's fees under the Uniform Declaratory Judgments Act in light of our opinion. *See* Tex. Civ. Prac. & Rem. Code § 37.009.